Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Las Cumbres Fuel Corp., San Claudio Fuel Corp., Señorial Fuel Corp., Paseo Petroleum Corp. y Carlos Hernández h/n/c Puma Venus Gardens Maracaibo Petroleum Corp., Del Mar Investment Group, Inc.; Asociación de Detallistas de Gasolina de Puerto Rico, Inc.<br><br>Recurrentes<br><br>vs.<br><br>Oficina de Gerencia de Permisos, VP Petroleum, LLC.<br><br>Recurridos | KLRA202400653 | **REVISIÓN ADMINISTRATIVA** procedente del Dept. de Desarrollo Económico y Comercio, Oficina de Gerencia y Permisos<br><br>Caso Núm.:<br><br>2023-473663-CCO-011805<br><br>Sobre:<br><br>Solicitud de Consulta para una Gasolinera |
| | CONS. | |
| Las Cumbres Fuel Corp., San Claudio Fuel Corp., Paseo Petroleum Corp. y Carlos Hernández h/n/c Puma Venus Gardens<br><br>Recurrentes<br><br>vs.<br><br>VP Petroleum, LLC Oficina de Gerencia de Permisos Oficina de Gerencia de Permisos Oficina de Gerencia de Permisos (OGPE); Junta de Planificación de PR; Dept. de Justicia, Ofic. De Asuntos Monopolísticos; Asoc. de Detallistas de Gasolina; Scimitar LLC., Caribe Pharmacy Holdings, LLC d/b/a Farmacia Caridad<br><br>Recurridos | KLAN202401157 | **REVISIÓN ADMINISTRATIVA** procedente del Dept. de Desarrollo Económico y Comercio, Oficina de Gerencia y Permisos<br><br>Caso Núm.:<br><br>2023-473663-CCO-011805<br><br>Sobre:<br><br>Solicitud de Consulta para una Gasolinera |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

Número Identificador

SEN2025 _____

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2025.

Comparece ante nos, Las Cumbres Fuel Corp., San Claudio Fuel Corp., Señorial Fuel Corp., Paseo Petroleum Corp., Carlos Hernández h/n/c Puma Venus Gardens, Marcaibo Petroleum Corp., Del Mar Investment Group, Inc. y la Asociación de Detallistas de Gasolina de Puerto Rico, Inc. (en conjunto, recurrentes) quienes presentan recurso revisión administrativa, con el código alfanumérico KLRA202400653, en el cual solicitan la revocación de la "Resolución" emitida el 18 de julio de 2024 y notificada el 1 de octubre de 2024 por la Oficina de Gerencia de Permisos de Puerto Rico (en adelante, OGPe o agencia recurrida). Mediante dicha determinación, la OGPe determinó favorable la consulta de construcción presentada por VP Petroleum, LLC. (VP o recurrida), para el establecimiento de una estación de gasolina con una tienda de conveniencia y local para la venta de comida en el Municipio de Trujillo Alto. Por otro lado, mediante recurso de apelación, con el código alfanumérico KLAN202401157, Las Cumbres Fuel Corp., San Claudio Fuel Corp., Señorial Fuel Corp., Paseo Petroleum Corp., Carlos Hernández h/n/c Puma Venus Gardens, (en conjunto, apelantes) solicitaron la revocación de la "Sentencia" emitida y notificada el 6 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, TPI o foro apelado). Mediante dicho dictamen, el foro apelado declaró Ha Lugar la "Moción de Desestimación" presentada por la OGPe y, en consecuencia, desestimó la "Demanda y Petición de Interdicto Estatutario" presentada por VP, la Junta de Planificación de Puerto Rico, el Departamento de Justicia Oficina de Asuntos Monopolísticos, la Asociación de Detallistas de Gasolina de Puerto Rico, Inc., Scimitar LLC., y Caribe Pharmacy

Holidings, LLC. d/b/a Farmacia Caridad (Caribe Pharmacy) (apelados).

Examinados ambos recursos, la totalidad de los expedientes y el estado de derecho aplicable, confirmamos ambos dictámenes mediante los fundamentos que expondremos a continuación.

**I.**

El 7 de febrero de 2023, VP presentó ante la consideración de la OGPe, el trámite discrecional de consulta de construcción para una estación de gasolina y un edificio para usos de oficina, almacén, venta de comida preparada y bebidas alcohólicas. La consulta quedó registrada bajo el número 2023-473663-CCO-011805.

Por su parte, el 2 de marzo de 2023, Las Cumbres Fuel Corp., San Claudio Fuel Corp., Señorial Fuel Corp., Paseo Petroleum Corp. y Carlos Hernández h/n/c Puma Venus Gardens, presentaron ante la OGPe una "Solicitud de Intervención" para el trámite de la consulta de construcción, la cual fue declarada Ha Lugar por la agencia recurrida mediante "Resolución sobre Solicitud de Intervención" emitida y notificada el 13 de marzo de 2023, bajo el caso número 2023-SIN-009485. En igual fecha, la OGPe declaró Ha Lugar la intervención de Marcaibo Petroleum Corp bajo el caso número 2023-SIN-009573. Posteriormente, el 31 de marzo de 2023, la OGPe declaró Ha Lugar la intervención de Del Mar Investment Group, Inc., bajo el caso número 2023-SIN-009630. A su vez, la "Solicitud de Intervención" de la Asociación de Detallistas de Gasolina de Puerto Rico, Inc. fue declarada Ha Lugar por la agencia recurrida mediante "Resolución sobre Solicitud de Intervención" emitida y notificada el 31 de marzo de 2023, bajo el caso número 2023-SIN-009665.

Así pues, el 15 de diciembre de 2023, se publicó el aviso de vista pública en el periódico Primera Hora. Luego de varias

recalendarizaciones, las vistas públicas correspondientes a la consulta de la construcción se celebraron el 19 de marzo de 2024 y el 16 de abril del mismo año, a través de la plataforma Microsoft Teams. Concluido el proceso de las vistas públicas, la OGPe concedió término para que las partes presentaran memorando post vista. Es por ello que, el 6 de mayo de 2024, VP y los recurrentes presentaron sus respectivos memorandos.

Luego de varios incidentes procesales, y una vez examinada la totalidad del expediente junto al informe de vista pública sometido por la Oficial Examinadora, Alma H. Acevedo Ojeda (en lo sucesivo, OE Acevedo Ojeda), el 18 de julio de 2024, la OGPe emitió una "Resolución". Dicha "Resolución" fue inicialmente notificada el 19 de julio de 2024, pero por un error en el funcionamiento del Sistema Unificado "Single Business Portal" (a continuación, SBP), no se les notificó a todas las partes. Por ello, el 1 de octubre de 2024, la OGPe emitió una nueva notificación señalando el error y advirtiendo que, a partir de dicha fecha, comenzarían a decursar los términos de revisión.

En cuanto al contenido de la "Resolución", la agencia recurrida determinó que el proyecto objeto de la consulta de construcción era favorable. Sin embargo, condicionó la aprobación del permiso a que VP: (1) cumpliera con las recomendaciones de la Autoridad de Carreteras y Transportación; (2) realizara solicitud de recomendaciones al Departamento de Educación; (3) no permitiera el consumo de bebidas alcohólicas en los predios de la estación y que solo se permitiera su consumo en el local comercial para venta de comida confeccionada, y (4) utilice 10 estacionamientos del predio aledaño, el cual también es propiedad de VP, los cuales según el memorial explicativo del proyectista Ingeniero Domingo Rodríguez Otero (en adelante, Ing. Rodríguez Otero), podían ser utilizados para cumplir con el Capítulo 8.5 del Reglamento

Conjunto 2020, *infra*. Así las cosas, el 26 de septiembre de 2024, el Profesional Autorizado, el Ingeniero Juan M. Curbelo Santiago (a continuación, PA), expidió el permiso de construcción consolidado número 2023-473663-PCOC-309162.

Insatisfechos con la determinación, el 18 de octubre de 2024, los recurrentes presentaron ante la División de Revisiones Administrativas (a continuación, DRA) de la OGPe, una Solicitud de Revisión Administrativa.[1] Transcurridos los 15 días que tenía la DRA para determinar si acogía o no la Solicitud de Revisión Administrativa, no hubo expresión de la DRA por lo que el recurso presentado se considera rechazado de plano.

En desacuerdo, el 26 de noviembre de 2024, los recurrentes presentaron ante este foro apelativo intermedio el recurso de revisión judicial KLRA202400653, y señalaron la comisión de los siguientes errores, a saber:

1. *Erróneamente en derecho determinó como favorable la Consulta de Permiso.*

2. *Erróneamente rechazó y decidió no acoger en derecho la Determinación de Hechos contenidas en el tercer párrafo de la página 4 del Informe y lo sustituyó por un Memorial Explicativo del Ingeniero Domingo Rodríguez, Profesional Autorizado de VP,*

3. *Erróneamente rechazó y decidió no acoger en derecho la Determinación de Derecho contenida en el quinto párrafo de la página 20 del Informe y lo sustituyó por una Declaración Jurada de VPP Holdings LLC.*

4. *Erróneamente rechazó y decidió no acoger en derecho la Recomendación del Informe determinando no favorable la consulta.*

5. *Erróneamente en derecho condicionó el Permiso a que se cumplan con las recomendaciones de la Autoridad de Carreteras.*

6. *Erróneamente en derecho condicionó el Permiso a que se soliciten recomendaciones del Departamento de Educación.*

7. *Erróneamente en derecho condicionó el Permiso a que los 10 estacionamientos para el uso de VP, por parte de VPP Holdings LLC, serán descontados de los estacionamientos disponibles para el Strip Mall de VPP Holdings LLC.*

---

[1] Titulada "Solicitud de Revisión Administrativa Sobre Permiso de Consulta de Construcción Concedido al Recurrido VP Petroleum, LLC".

Cabe señalar que, mientras estaba pendiente la Solicitud de Revisión Administrativa ante la consideración de la DRA, el 28 de octubre de 2024, los apelantes interpusieron una "Demanda y Petición de Interdicto Estatutario" al amparo del Art. 14.1 de la Ley Núm. 161-2009, *infra*. En síntesis, solicitaron la revocación del permiso de construcción consolidado número 2023-473663-PCOC-309162, la paralización de las obras de construcción y la demolición de las obras comenzadas, utilizando como base las alegadas violaciones de ley y reglamento aplicables por parte de la OGPe y de VP durante el trámite de la consulta de construcción.

En vista de lo anterior, el 7 de noviembre de 2024, la OGPe presentó una Moción de Desestimación,[2] en la cual alegó falta de jurisdicción sobre la materia y falta de parte indispensable.

Examinada las solicitudes de las partes, el 6 de diciembre de 2024, el TPI emitió y notificó una "Sentencia" en la cual declaró Ha Lugar la Moción de Desestimación presentada por la OGPe y, en consecuencia, desestimó la "Demanda y Petición de Interdicto Estatutario" presentada por los apelantes. El foro apelado determinó que la reclamación adolecía de esbozar conductas específicas que expusieran alguna de las circunstancias establecidas en los Arts. 9.10 y 14.1 de la Ley Núm. 161-2009, *infra*. De igual forma, concluyó que los hechos alegados en la demanda daban margen a dudas, pues muchos de ellos versaban sobre permisos que no estaban en controversia en el pleito.

En desacuerdo, los apelantes recurren ante este foro apelativo intermedio, y señalan la comisión de los siguientes errores, a saber:

*Primer Señalamiento de Error*

*El TPI ha cometido error al dictar la Sentencia de 6 de diciembre de 2024 contrario a derecho.*

---

[2] Titulada "Moción de Desestimación por Falta de Jurisdicción; Falta de Parte Indispensable; Representación Legal".

*Segundo Señalamiento de Error*

*El TPI ha cometido error al dictar la Sentencia de 6 de diciembre de 2024 haciendo uso de abuso de discreción.*

*Tercer Señalamiento de Error*

*El TPI ha cometido error al dictar la Sentencia de 6 de diciembre de 2024 y declarar Ha Lugar la Moción de Desestimación presentada el 7 de noviembre de 2024 por la Oficina de Gerencia de Permisos (Entrada #18)*

*Cuarto Señalamiento de Error*

*El TPI ha cometido error al dictar la Sentencia de 6 de diciembre de 2024 desestimando la Demanda de Interdicto Estatutario, Art. 14, Ley 161 de 2009, según enmendada, e Interdicto Provisional y Permanente en cuanto a todas las partes demandadas.*

*Quinto Señalamiento de Error*

*El TPI ha cometido error al dictar la Sentencia de 6 de diciembre de 2024 al determinar que carece de jurisdicción para atender la controversia de marras.*

*Sexto Señalamiento de Error*

*El TPI ha cometido error al dictar la Sentencia de 6 de diciembre de 2024 al determinar que "la demanda de epígrafe adolece de esbozar conductas específicas que expongan alguna de las circunstancias requeridas por los Artículos 14.1 o 9.10 de la Ley 161-2009".*

Con relación al recurso KLRA202400653, el 20 de diciembre de 2024, la OGPe presentó su "Oposición a Recurso de Revisión Judicial". A su vez, el 26 de diciembre de 2024, VP presentó su "Alegato en Oposición a Recurso de Revisión de Decisión Administrativa".

Referente al recurso KLAN202401157, presentado por los apelantes, la OGPe presentó su "Alegato en Oposición" el 25 de enero de 2025. Por su parte, el 27 de enero de 2025, VP, Caribe Pharmacy y la Asociación de Detallistas de Gasolina de Puerto Rico, Inc. presentaron sus respectivos alegatos en oposición.

Examinados los escritos presentados, este Tribunal *motu proprio* consolida los recursos KLRA202400653 y KLAN202401157, pues tratan del mismo asunto. Se ha establecido que, cuando este foro intermedio apelativo tenga ante su consideración, en conexión

con un mismo caso o trámite, más de un recurso pendiente, los mismo deben ser consolidados.[3]

Consideradas las comparecencias de las partes, damos por perfeccionado el recurso y resolvemos.

## II.

### A.

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia sobre la materia que su ley habilitadora les confiere. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Depto. Corrección*, 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A.R.Pe.*, 152 DPR 116, 122 (2000). Esto significa que este Tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v.*

---

[3] Véase, "Orden Administrativa Núm. DJ 2019-316", según enmendada por la "Orden Administrativa Núm. DJ 2019-316".

*J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.*

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión.

**B.**

Los tribunales tienen la responsabilidad de examinar su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). La jurisdicción se refiere al "poder o la autoridad que tiene un tribunal para considerar y decidir casos o

controversias que tiene ante sí". *R&B Power. Inc. v. Junta de Subasta ASG*, 2024 TSPR 24, 213 DPR ___ (2024). Los tribunales deben ser celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022). En ese sentido, los asuntos concernientes a la jurisdicción son privilegiados y deben ser atendidos de forma preferente. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018). Esto, pues, "[u]na vez un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la desestimación inmediata del recurso". *Pueblo v. Torres Medina*, 211 DPR 950, 958 (2023).

Es norma reiterada que, para adjudicar un caso, los foros judiciales de Puerto Rico deben tener jurisdicción sobre la materia, así como sobre las partes litigiosas. *FCPR v. ELA et al.*, 211 DPR 521, 530 (2023). La jurisdicción sobre la materia "se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". J.A. Echevarría Vargas, <u>Procedimiento Civil Puertorriqueño</u>, 1ra ed., Colombia, 2010, pág. 25. Es el Estado el único que puede, a través de sus leyes, privar a un tribunal de jurisdicción sobre la materia, ya sea por disposición expresa o por implicación necesaria. *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135, 145 (2023). La falta de jurisdicción sobre la materia da lugar a las consecuencias siguientes:

> *(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. Beltrán Cintrón et al v. ELA et al,* 204 DPR 89, 101-102 (2020).

Por otro lado, la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R. 83, nos otorga la facultad para desestimar, *muto proprio*, cualquier recurso cuando, entre otras circunstancias, este Tribunal de Apelaciones carezca de jurisdicción para atender el mismo.

## C.

La Ley Núm. 161-2009, 23 LPRA sec. 9011 *et seq.*, mejor conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico, según enmendada, provee el marco jurídico para la solicitud, evaluación, concesión y denegación de permisos en el Gobierno de Puerto Rico. A esos fines, mediante el antedicho estatuto se creó la Oficina de Gerencia de Permisos (OGPe),[4] organismo gubernamental que tiene la facultad de evaluar, conceder o denegar determinaciones finales para las consultas de construcción y los permisos relacionados con el desarrollo y uso de un negocio en Puerto Rico. Art. 2.5 de la Ley Núm. 161-2009, 23 LPRA sec. 9012d.

Así, mediante el Art. 6.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9016e, "[s]e crea la Junta Adjudicativa de la Oficina de Gerencia de Permisos, como organismo adscrito a dicha Oficina, delegándosele la responsabilidad de evaluar y adjudicar solicitudes de carácter discrecional". Por su parte, el Art. 6.3 de la Ley Núm. 161-2009, 23 LPRA sec. 9016g, establece lo siguiente:

> *La Junta Adjudicativa tendrá los siguientes deberes, facultades y funciones generales, además de aquéllos conferidos por esta Ley, o por cualquier otra ley:*
>
> *a) evaluar y adjudicar solicitudes de carácter discrecional;*
>
> *b) evaluar y adjudicar asuntos en áreas no calificadas. En estos casos las determinaciones no establecerán una política general o definirán política pública, quedando esta responsabilidad en jurisdicción exclusiva de la Junta de Planificación;*
>
> *c) celebrar vistas;*

---

[4] *Véase*, Art. 2.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9012.

*d) como parte de sus determinaciones, podrá hacer modificaciones o imponer cualquier condición necesaria para la aprobación de la solicitud;*

*e) descargar cualquier otra función que se le delegue mediante esta Ley.*

Por otro lado, y en virtud de la Ley Núm. 161-2009, *supra*, se crea el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios (en adelante, Reglamento Conjunto 2020).[5] A tales efectos, el Reglamento Conjunto 2020, *supra*, define la "consulta de construcción" como el "[t]rámite ante la OGPe, sobre un proyecto de uso ministerial, pero que conlleva variaciones a los parámetros de construcción del distrito donde ubica, el cual será adjudicado por la Junta Adjudicativa o Municipio Autónomo con Jerarquía de la I a la III11". Véase, Tomo XII, Parte III del Reglamento Conjunto 2020, *supra*, a la pág. 770.

Asimismo, el Reglamento Conjunto 2020, *supra*, define el término "discrecional" como:

> *[U]na determinación que conlleva juicio subjetivo por parte de un funcionario público, Junta Adjudicativa o Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Estos, utilizan discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra más allá del uso de estándares fijos o medidas objetivas. El funcionario, Junta Adjudicativa o Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe ser realizada. Íd., a la pág. 807.*

Cónsono con lo anterior, el Reglamento Conjunto 2020, *supra*, dispone lo siguiente sobre los trámites de índole discrecional:

> *Regla 2.2.2 ASUNTOS DISCRECIONALES*
>
> *a. Los asuntos de naturaleza discrecional serán atendidos por la Junta Adjudicativa, el Secretario*

---

[5] La vigencia del Reglamento Conjunto 2020, *supra*, se extiende desde el 2 de enero de 2021, y fue declarado nulo el 16 de junio de 2023 por el Tribunal Supremo de Puerto Rico en *Martínez Fernández et al. v. OGPE et al.*, 212 DPR 285 (2023). Sin embargo, de acuerdo con nuestro Máximo Foro, por ser su nulidad prospectiva, sus disposiciones le fueron de aplicación a la consulta de construcción objeto de revisión del recurso de autos.

*Auxiliar de la OGPe o los Municipios Autónomos con Jerarquía de la I a la III.*

*b. La Junta Adjudicativa, el Secretario Auxiliar de la OGPe o los Municipios Autónomos con Jerarquía de la I a la III, en todos los casos, tomarán su determinación final considerando la totalidad del expediente.*

*c. Estos prepararán, emitirán y notificarán la resolución en la cual incluya las determinaciones de hechos y conclusiones de derecho que fundamenten el acuerdo tomado, identificando a las personas que se consideran partes en el procedimiento.*

*d. Resolución del Secretario Auxiliar de OGPe advertirá a cualquier parte afectada de su derecho a solicitar una revisión administrativa ante la División de Revisiones Administrativas de la OGPe o revisión judicial de decisión administrativa ante el Tribunal de Apelaciones.*

*e. La resolución de la Junta Adjudicativa, se advertirá a cualquier parte afectada de su derecho a solicitar una revisión administrativa ante la División de Revisiones Administrativas de la OGPe o revisión judicial de decisión administrativa ante el Tribunal de Apelaciones.*

*f. La resolución de los Municipio Autónomo con Jerarquía de la I a la III advertirá a cualquier parte afectada de su derecho a solicitar una revisión ante la División de Revisiones Administrativas de la OGPe o revisión judicial de decisión administrativa ante el Tribunal de Apelaciones.*

*[…]*

*SECCIÓN 2.2.2.5 CRITERIOS DE EVALUACIÓN DE SOLICITUDES DE CARÁCTER DISCRECIONAL ANTE LA OGPE O MUNICIPIO AUTÓNOMO CON JERARQUÍA DE LA I A LA III*

*Además de las disposiciones de este Reglamento, el Secretario Auxiliar de la OGPe o Municipio Autónomo con Jerarquía I a la III estudiará, tramitará y resolverá las solicitudes de asuntos discrecionales tomando en consideración lo siguiente, según aplique:*

*a. Se deberá someter un memorial explicativo que incluya, pero sin limitarse a lo siguiente:*

> *1. Localización específica del proyecto.*
> *2. Usos existentes en el sector.*
> *3. Recomendaciones de las Unidades de Permisos de la OGPe.*
> *4. Recomendaciones del Director de la DECA.*
> *5. Reglamentos de la OGPe.*
> *6. Códigos de Construcción adoptados por la OGPe.*
> *7. Ley 161-2009, según enmendada - Ley para la Reforma del Proceso de Permisos de Puerto Rico.*
> *8. Ley Núm. 75 de 24 de junio de 1975, según enmendada- Ley Orgánica de la junta de Planificación.*
> *9. Ley 107-2020 - Código Municipal de Puerto Rico.*

*10. Ley 416-2004, según enmendada - Ley sobre Política Pública Ambiental.*
*11. Plan Integral de Desarrollo Estratégico Sostenible de Puerto Rico (PIDES, PR).*
*12. Plan de Uso de Terrenos de Puerto Rico.*
*13. Planes de Usos de Terrenos, Especiales y Regionales.*
*14. Planes de Ordenación Territorial.*
*15. Mapas de Zonificación o Calificación.*
*16. Áreas Especiales de Riesgos a Inundación.*
*17. Disponibilidad de Infraestructura física.*
*18. Rasgos topográficos.*
*19. Condición del subsuelo.*
*20. Riesgos a deslizamientos*
*21. Situación de la infraestructura física y social en el Lugar (calles, aceductos y alcatarillado, energía eléctrica, transportación, recogido de basura, servicio policiaco y otros).*
*22. Densidad poblacional.*
*23. Condiciones ambientales.*
*24. Distancia entre los terrenos y las áreas construidas.*
*25. Importancia agrícola, ambiental o turística de los terrenos.*
*26. Otras condiciones sociales, económicas y físicas análogas.*

*b. Se acompañará de las recomendaciones siguientes:*

*1. Recomendación de las Unidades de Permisos de la OGPe*
*2. Recomendación del Director de la DECA*
*3. Recomendación de los Municipios*

*c. Cuando el Secretario Auxiliar de la OGPe lo estime necesario, podrá requerir información adicional o aclaratoria. La parte a la cual se le dirija la información podrá:*

*1. Solicitar prórroga al término concedido, cumpliendo con el reglamento de pago correspondiente.*
*2. De no someterse dicha información en el término establecido, la OGPe podrá emitir cualquier determinación que en derecho proceda. La OGPe podrá archivar la petición, en aquellos casos en los cuales el peticionario no cumpla con lo solicitado, tendrá que comenzar nuevamente el proceso de solicitud.*
*3. Recomendación de las Entidades Gubernamentales Concernidas*

*d. El Secretario Auxiliar de la OGPe, motu proprio, a petición de parte o cuando el interés público así lo requiera, podrá ordenar la celebración de vistas públicas.*

*e. Una vez adjudicado un asunto ante la consideración del Secretario Auxiliar de la OGPe, se procederá a preparar y notificar la resolución con el acuerdo, en un término no mayor de veinte (20) días por correo electrónico.*

[…]

*SECCIÓN 2.2.3.4 LEGITIMACIÓN ACTIVA (STANDING)*

*Los asuntos adjudicativos ante la Junta Adjudicativa, podrán ser presentados según se dispone a continuación:*

*a. Toda consulta, sus enmiendas, prórrogas y reaperturas podrán ser promovidos por el dueño, optatante o arrendatario de la propiedad por sí o a través de su representante autorizado en casos de proyectos privados, por el Jefe de la Agencia o su representante autorizado en caso de un proyecto público.*

*b. Todo planteamiento o documento relacionado con un asunto adjudicativo ante la Junta Adjudicativa, deberá ser presentado en el SUI, por la persona expresamente autorizado para ello. De no cumplirse con este requisito se tendrá por no presentado y formará parte del expediente.*

*c. La revocación de una consulta podrá ser promovida por la Junta Adjudicativa a iniciativa propia o a solicitud de persona con interés legítimo.*

*d. Las órdenes provisionales, de hacer, no hacer, de cese y desistimiento podrán ser promovidas a iniciativa propia o a solicitud de persona con interés legítimo.*

[…]

*REGLA 2.2.7 PRESUNCIÓN DE CORRECCIÓN Y LEGALIDAD*

*a. Existe una presunción de corrección y legalidad para las determinaciones finales y los permisos expedidos por OGPe, los PA o los Municipios Autónomos con Jerarquías de la I a la III.*

*b. Las determinaciones finales y permisos podrán ser revocados por el Tribunal de Primera Instancia, solamente cuando luego de la investigación administrativa correspondiente advenga en conocimiento de que dicha determinación final fue obtenida en violación a las leyes o reglamentos aplicables; o cuando la determinación final fue obtenida legalmente, pero existe evidencia de un incumplimiento a leyes y reglamentos durante su ejecución u operación.*

*c. Bajo ninguna circunstancia una determinación final será suspendida sin mediar una autorización o mandato judicial de un Tribunal competente o el foro correspondiente.*

*d. Una determinación final o un permiso se considerará final y firme, no podrá ser impugnado una vez el solicitante haya cumplido con todos los requisitos establecidos en la notificación de determinación final y haya transcurrido el término de veinte (20) días.*

*e. Una parte adversamente afectada por una determinación final podrá presentar un recurso de revisión administrativa o revisión judicial, según aplique, conforme se establece en la Ley de Procedimiento Administrativo Uniforme.*

*f. La aprobación de una consulta pública no implica, en forma alguna, la aprobación de la transacción o del permiso de construcción en sí, la cual deberá regirse por lo establecido en este Reglamento.*

Ahora bien, en cuanto a las estaciones de gasolina, el Capítulo 8.8 del Reglamento Conjunto 2020, establece las siguientes disposiciones:

*CAPÍTULO 8.8 ESTACIONES DE GASOLINA*

*REGLA 8.8.1 DISPOSICIONES GENERALES SOBRE ESTACIONES DE GASOLINA*

*SECCIÓN 8.8.1.1 EJECUCIÓN*

*La OGPe o el Municipio Autónomo con Jerarquía de la I a la III entenderán, sujeto a lo establecido en esta Sección, en toda solicitud para una nueva estación de gasolina en los distritos permitidos por este Reglamento.*

*SECCIÓN 8.8.1.2 INICIATIVA*

*Toda solicitud para una nueva estación de gasolina o ampliación a una existente que conlleve un aumento en el número de despachadoras existentes, mayor a un cincuenta por ciento (50%), deberá ser acompañada de una certificación donde conste que han sido notificados de la intención de establecer dicha estación de gasolina todos los distribuidores, mayoristas, dueños o arrendatarios de estaciones de gasolina que radiquen dentro del perímetro establecido más adelante a propósito del estudio de viabilidad. Dicha certificación incluirá el nombre y la dirección de las personas notificadas.*

*SECCIÓN 8.8.1.3 VISTAS PÚBLICAS*

*a. La OGPe o el Municipio Autónomo con Jerarquía de la I a la III podrán aprobar el establecimiento de nuevas estaciones de gasolina, previa celebración de vistas públicas y previa recomendación del DDEC.*

*b. Sobre estas vistas públicas se notificará y solicitará la participación del DDEC, DACO, DJ, a los distribuidores mayoristas, dueños o arrendatarios de las estaciones de gasolina comprendidas dentro del perímetro antes establecido como propósito del estudio de viabilidad, a los detallistas que operan dichas estaciones de gasolina, las asociaciones existentes de detallistas de gasolina y a cualquier otra parte afectada o interesada, según surja de los expedientes correspondientes.*

*SECCIÓN 8.8.1.4 ESTUDIO DE VIABILIDAD*

*a. Toda solicitud para una nueva estación de gasolina o ampliación a una existente que conlleve un aumento en el número de despachadoras existentes, mayor a un cincuenta por ciento (50%), deberá ser acompañada de*

*un estudio de viabilidad que demuestre la necesidad y conveniencia del establecimiento de la misma.*

*b. Dicho estudio deberá considerar, con respecto al sector dentro del perímetro de mil seiscientos (1,600) metros radiales, los siguientes aspectos:*

*1. La concentración poblacional.*
*2. La concentración el tránsito vehicular, de los residentes en el área de mercado.*
*3. Intensidad de los usos comerciales, industriales e institucionales.*
*4. Negocios similares existentes dentro del sector.*
*5. Impacto anticipado del nuevo establecimiento sobre aquellos de naturaleza similar existentes dentro de dicho perímetro.*
*6. La forma de operación de la nueva estación, esto es, si es de tipo convencional o de autoservicio.*
*7. Análisis de tránsito que considere la demanda a satisfacer de los residentes en el área de mercado, el tránsito esperado y el impacto sobre las vías existentes.*

*c. Considerar la cercanía a áreas naturales protegidas, y cuerpos hídricos superficiales y subterráneos.*

*d. Cualesquiera otros factores relevantes que merezcan consideración en relación con la propuesta estación de gasolina.*

**D.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, le permite al demandado solicitar que se desestime la demanda en su contra antes de contestarla. *Inmobiliaria Baleares, LLC v. Benabe González*, 2024 TSPR 112, 214 DPR ___ (2024). La aludida regla dispone lo siguiente:

*Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable.*

Al evaluar una moción de desestimación, el tribunal está obligado a dar por ciertos, y de la forma más favorable para el demandante, todos los hechos bien alegados en su reclamación,

siempre y cuando hayan sido aseverados de manera clara y concluyente. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 78 (2023). Por ello, nos corresponde evaluar si, a la luz de la situación más favorable al demandante, las alegaciones contenidas en su demanda son suficientes para constituir una reclamación válida. *Díaz Vázquez y otros v. Colón Peña y otros*, 2024 TSPR 113, 214 DPR ___ (2024). Así pues, para desestimar un caso por falta de jurisdicción sobre la materia "es necesario determinar si, tomando como cierto lo alegado por el demandante, el foro tiene jurisdicción para atender el reclamo". *Colón Rivera, et al. v. ELA*, 189 DPR 1033, 1049 (2013).

Nótese que al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y "únicamente procedería cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante". R. Hernández Colón, Derecho Procesal Civil, 4ta ed., San Juan, Ed. Lexis–Nexis, 2007, pág. 231. Conforme la Regla 10.8(c) de Procedimiento Civil, 32 LPRA Ap. V, una vez surge, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción, procede la desestimación del pleito. *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 936 (2011).

### E.

Pertinente a la controversia, el Art. 14.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9024, dispone lo siguiente:

> *La Junta de Planificación, un Municipio Autónomo con Jerarquía de la I a la III, una Entidad Gubernamental Concernida que haya determinado que sus leyes y reglamentos han sido violados, o **cualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado**, podrá presentar una **acción de injunction**, mandamus, sentencia declaratoria, o cualquier otra acción adecuada **para solicitar: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con***

> ***las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado****; 3) la paralización de un uso no autorizado O de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) **la demolición de obras construidas***, *que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado*.

(Énfasis nuestro).

Como puede observarse, la antedicha disposición estatuye un mecanismo interdictal extraordinario de carácter estatutario y sumario "limitado a la obtención de órdenes para la paralización inmediata, provisional o permanente de usos contrarios a la ley". *A.R.Pe v. Rivera*, 159 DPR 429, 443-444 (2003). Dada su naturaleza, el *injunction* estatutario es independiente del *injunction* tradicional y, por consecuencia, generalmente exento de las exigencias legales que rigen a éste. *Next Step Medical v. Bromedicom et al.*, 190 DPR 474, 478 (2014). La doctrina interpretativa reconoce que los requisitos para la ejecución del *injunction* tradicional son más rigurosos que los aplicables a aquel de índole estatutario. *Íd.* Ello obedece a que, en esencia, el interdicto tradicional se adoptó del sistema de equidad inglés para disponer de situaciones para cuya atención no existe remedio adecuado en ley. *Íd.*, a la pág. 486

Por su parte, el *injunction* estatutario tiene su origen en un mandato legislativo expreso. *A.R.Pe v. Rivera, supra,* a la pág. 444. De ahí que, contrario al interdicto tradicional, su concesión "requiere un tratamiento especial, enmarcado en un escrutinio judicial más acotado". *Next Step Medical v. Bromedicom et al., supra,* a la pág. 497. Así, a tenor con la doctrina vigente, al interponerse una petición de *injunction* de esta naturaleza, "[n]o se requiere alegación ni prueba de daños irreparables, sino sólo la determinación de que el demandado ha violado las disposiciones

de la ley". *A.R.Pe v. Rivera, supra,* pág. 444. Por igual, y en el contexto específico del empleo del mecanismo interdictal establecido en el Art. 14.1 de la Ley Núm. 161-2009, *supra,* toda persona legitimada para valerse del mismo deberá establecer ante el tribunal competente lo siguiente: 1) que existe una ley o reglamento que regula el uso o actividad denunciada y; 2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento. *A.R.Pe v. Rivera, supra,* pág. 445.

De igual modo, el Art. 9.10 de la Ley Núm. 161-2009, 23 LPRA sec. 9019i, dispone sobre la certeza de los permisos e indica lo siguiente:

> *No obstante, **cuando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso**, o en aquellos casos en que la estructura represente un riesgo a la salud o la seguridad, a condiciones ambientales o arqueológicas, **la determinación final emitida y el permiso otorgado por la Oficina de Gerencia de Permisos**, por el Municipio Autónomo con Jerarquía de la I a la V o por el Profesional Autorizado, **deberá ser revocado**.*

(Énfasis suplido).

Es decir, además de las circunstancias presentes en el Art. 14.1 de la Ley Núm. 161-2009, *supra,* también procede una acción cuando medie alguna de las circunstancias presentes en el Art. 9.10 de la Ley Núm. 161-2009, *supra.*

**III.**

**A.**

Comenzaremos nuestra discusión atendiendo los errores señalados por los recurrentes en el recurso de revisión judicial KLRA202400653. De este modo, iniciamos nuestro análisis al resolver si la OGPe actuó correctamente al emitir una "Resolución" mediante la cual determinó favorable la consulta de construcción presentada por VP, para el establecimiento de una estación de

gasolina con una tienda de conveniencia y local para la venta de comida en el municipio de Trujillo Alto.

De los hechos discutidos surge que, en el ejercicio de sus facultades para revisar, evaluar y emitir determinaciones finales sobre trámites discrecionales, la OGPe determinó acoger la consulta de construcción número 2023-473663-CCO-011805.

En el caso de autos, los recurrentes alegaron en su demanda que la consulta de construcción presentada por VP contenía información falsa para inducir a error a la OGPe. Por su parte, la VP y la OGPe adujeron que la consulta de construcción cumplió con lo establecido en la Ley Núm. 161-2009, *supra*, y con el Reglamento Conjunto 2020, *supra*.

Tras un análisis del legajo apelativo, somos del criterio que los recurrentes no han presentado evidencia concluyente que respalde sus alegaciones. En cambio, de la prueba presentada se desprende que VP cumplió con los requisitos establecidos en la Ley Núm. 161-2009, *supra*, y con las disposiciones del Reglamento Conjunto 2020, *supra*. Prueba de ello es: (1) la certificación de legitimación activa y la documentación correspondiente; (2) la evaluación de impacto ambiental y; (3) los estudios de viabilidad realizados por el profesional calificado.

De igual manera, entendemos que no surge del expediente administrativo prueba alguna que llevara a la agencia recurrida a concluir razonablemente que la prueba presentada incumplía con los estándares regulatorios aplicables. A nuestro juicio, la OGPe no operó engañada ni actuó erróneamente al evaluar y declarar favorable la consulta de construcción a la luz de la totalidad del expediente administrativo. Como esbozamos anteriormente, existe una presunción de corrección y legalidad para las determinaciones finales y los permisos expedidos por OGPe. Regla 2.2.7 (a) del Reglamento Conjunto 2020, *supra*.

De igual forma, se ha establecido que las determinaciones finales y permisos podrán ser revocados solamente cuando la determinación final fue obtenida en violación a las leyes o reglamentos aplicables; o cuando la determinación final fue obtenida legalmente, pero existe evidencia de un incumplimiento a leyes y reglamentos durante su ejecución u operación. Regla 2.2.7 (b) del Reglamento Conjunto 2020, *supra*. En el caso de marras, debemos darle entera deferencia a la determinación de la OGPe, toda vez que los recurrentes no lograron presentar evidencia sustancial de que la determinación final fue obtenida en violación a la Ley Núm. 161-2009, *supra*, y el Reglamento Conjunto 2020, *supra*.

Por otro lado, la OGPe tampoco incidió al acreditar valor probatorio al memorial explicativo certificado, firmado y sellado por el proyectista Ing. Rodríguez Otero, el cual incluyó el cómputo de estacionamientos necesarios para cumplir con las disposiciones reglamentarias aplicables.

El Reglamento Conjunto 2020, *supra*, define la figura proyectista como el "[i]ngeniero o arquitecto licenciado y colegiado que prepara y certifica, bajo su supervisión o coordinación, los planos y documentos de obras de construcción, inscripción y las certificaciones necesarias para la expedición de permisos, el agrimensor que prepara y certifica los planos relacionados a su profesión o el planificador profesional licenciado que prepara y certifica documentos relacionados a su profesión." Tomo XII, Parte III del Reglamento Conjunto 2020, *supra*, a la pág. 862.

La OGPe le dio entero crédito al memorial explicativo del Ing. Rodríguez Otero, en el cual, según la propia agencia, explicó que, para cumplir con la Regla 8.5.3, Sección 8.5.3.1 (g) del Reglamento

Conjunto 2020,[6] se requerían 22 estacionamientos y que el proyecto cumplía con 23. De acuerdo con la prueba que tuvo ante sí la agencia recurrida, 13 estacionamientos estarían ubicados dentro del predio y otros 10 estarían localizados en un proyecto adyacente propiedad de VP. Así pues, tras la OGPe evaluar la totalidad de la prueba presentada y, en ausencia de evidencia concluyente que demostrara lo contrario, la agencia recurrida ejerció correctamente su discreción, y razonablemente determinó que el proyecto cumplía con las disposiciones reglamentarias aplicables a los estacionamientos.

En primer lugar, quedó constatado que, la OGPe tuvo ante su consideración prueba certificada, firmada y sellada por un proyectista ingeniero licenciado, según lo requiere el Reglamento Conjunto 2020, *supra*. En segundo lugar, aunque la parte recurrente alegó en su recurso que el memorial explicativo no fue presentado ante la OE Acevedo Ojeda, lo cierto es que, dicho memorial fue sometido el 2 de marzo de 2023 y la vista pública inició el 19 de igual mes y año. Por lo que, al momento en que se celebró la vista pública, ya este memorial constaba en los autos del caso. Por último, en el informe de la OE Acevedo Ojeda surge de forma clara y evidente que la razón para concluir que no se cumplieron las disposiciones del Capítulo 8.5 del Reglamento Conjunto 2020 fue porque "[n]o obra en el expediente, ni se presentó en la vista pública, el cálculo de estacionamientos ni estudios sobre estacionamiento compartido".[7] Como ya indicamos, el referido memorial, el cual incluye el cálculo y el estudio sobre los estacionamientos, ya constaba en el expediente administrativo.

---

[6] g. Comercio para venta al detal o donde se han de prestar servicios: Un (1) espacio por cada quince (15) metros cuadrados o parte de éstos, de área neta de piso dedicada a tales fines y un (1) espacio por cada setenta (70) metros cuadrados o parte de éstos, de área neta de piso dedicada a almacenaje. De no indicarse el área de almacenaje, ésta se estimará equivalente a una tercera (1/3) parte del área total del comercio o servicio. Se proveerá un espacio de estacionamiento adicional por cada tres (3) empleados o parte de éstos.

[7] Véase, "Informe de Vista" a la página 20; Apéndice página 24.

Adicionalmente, la razón que profirió la OGPe para rechazar la determinación de la OE Acevedo Ojeda fue precisamente que el memorial explicativo "incluye el cómputo de estacionamientos para la gasolinera y para el local comercial, por lo que cumple con el Capitulo 8.5 del Reglamento Conjunto".[8]

Concluimos que la determinación de la OGPe es una razonable que merece nuestra mayor deferencia. Tampoco los recurrentes han presentado prueba concluyente que demuestre lo contrario, sino que se limitaron a hacer meras alegaciones sin tan siquiera cuestionar la certeza de la conclusión a la cual llegó el Ing. Rodríguez Otero en el memorial explicativo. Debido a que no se nos ha puesto en posición de concluir lo contrario, entendemos que la agencia recurrida actuó en ausencia de perjuicio o arbitrariamente.

Tampoco les asiste la razón a los recurrentes en cuanto a que la OGPe erró al no acoger la recomendación del "Informe de Vista" presentado por la OE Acevedo Ojeda, en el cual determinó no favorable la consulta.

La Regla 11.6.1, Sección 11.6.1.12(c) del Reglamento Conjunto 2020, *supra*, provee que la agencia "no está obligada a acoger la recomendación hecha por el Oficial Examinador". Cónsono con lo anterior, la OGPe no estaba obligada a adoptar ciegamente las recomendaciones realizadas por la OE Acevedo Ojeda como adujeron los recurrentes. Máxime, cuando la agencia recurrida tuvo la oportunidad de identificar en el expediente administrativo prueba que acreditara el cumplimiento de VP con las disposiciones de ley y reglamentarias aplicables. Por lo antes esbozado, sostenemos que no se cometió el error antes mencionado.

---

[8] Véase, "Resolución" recurrida a la página 1; Apéndice página 1.

Finalmente, y por estar íntimamente relacionados los errores quinto, sexto y séptimo procedemos a discutirlos conjuntamente. En su recurso, los recurrentes sostuvieron que la OGPe no podía condicionar el permiso a que se solicitaran y cumplieran con las recomendaciones hechas por la Autoridad de Carreteras y el Departamento de Educación, y que los 10 estacionamientos fueran descontados del predio adyacente propiedad de la recurrida. Sin embargo, el Art. 6.3 (d) de la Ley Núm. 161-2009, *supra*, dispone que la agencia "como parte de sus determinaciones, podrá hacer modificaciones o imponer cualquier condición necesaria para la aprobación de la solicitud". Además, la Regla 8.5.1, Sección 8.5.1.1 del Reglamento Conjunto 2020, provee para que un proyecto pueda utilizar los estacionamientos de un edificio accesorio o de en un área remanente del solar en que está ubicado el edificio principal. De tal modo, la OGPe estaba facultada para, dentro de su determinación favorable del proyecto, condicionar la aprobación del permiso.

Por las razones que anteceden, determinamos que la determinación de la OGPe fue correcta. Los recurrentes no aportaron evidencia suficiente para derrotar la presunción de corrección que caracteriza la decisión del foro administrativo. Es importante enfatizar que, al desempeñar nuestra función revisora, estamos obligados a considerar la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativa. Consideramos que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. La totalidad de la evidencia que obra en el récord nos obliga a confirmar el dictamen recurrido.

**B**.

En el recurso de apelación presentado por los apelantes, KLAN202400653, éstos aducen que el TPI cometió seis (6) errores.

Por estar íntimamente relacionados, procedemos a discutirlos conjuntamente.

Según surge del tracto procesal discutido, el TPI emitió "Sentencia" y desestimó la reclamación presentada por los apelantes, en vista de que la demanda de interdicto no cumplía con los requisitos necesarios para la expedición del *injunction*, según esbozados en la Ley Núm. 161-2009, *supra*.

En su recurso, los apelantes arguyen que el TPI erró al declarar Ha Lugar la "Moción de Desestimación" presentada por la OGPe. En resumidas cuentas, arguyen que VP ha incurrido en múltiples actos fraudulentos y engañosos, falsedades y ocultación de información. Particularmente, señalan que: (1) el permiso de construcción es inoficioso debido a que se aprobó en base a la "Resolución" del 19 de agosto de 2024, la cual no fue notificada conforme a derecho sino hasta el 1 de octubre de 2024; (2) la cercanía de la construcción con aguas subterráneas violenta la ley y reglamentación aplicable; (3) la cercanía de la construcción con escuelas y centros de cuidado violenta la ley y la reglamentación aplicable; (4) la Autoridad de Carreteras ni el Departamento de Educación tienen autoridad para, mediante cartas, pasar por alto lo establecido en ley; y (5) el rótulo anunciando la construcción no fue colocado en la entrada del proyecto hasta el 2 de octubre de 2024 aun cuando el permiso de construcción fue abierto en el año 2023. Por esto, sostienen que VP no fue honesto durante el proceso administrativo, y que ha diseñado una estrategia intencional para obtener un permiso que no pudiera obtener sin ofrecer información falsa.

La Asociación de Detallistas de Gasolina de Puerto Rico, Inc. coincide con los apelantes respecto a que el permiso de construcción en controversia es nulo y fue expedido ilegalmente. Asimismo, enfatiza que la desestimación no procede como cuestión

de derecho, y que los apelantes demostraron la mala fe, fraude, falsedad en el trámite y expedición del permiso.

Por su parte, la OGPe enfatiza en que el TPI carecía de jurisdicción para atender el *injunction* estatutario. Insiste en que la demanda no incluyó alegaciones sobre conductas especificas de fraude, engaño, extorsión, soborno o la comisión de algún delito, y que tampoco se acumuló como parte al PA que expidió el permiso quien, según la propia ley, es parte indispensable en el caso.

En su alegato, VP nos solicita que confirmemos la Sentencia apelada. Hace hincapié en lo siguiente: (1) distinto a la etapa de la consulta de construcción, el Reglamento Conjunto no exige que se celebren vistas públicas en la etapa del permiso de construcción; (2) el PA está autorizado para otorgar determinaciones finales, entre ellas, permisos de construcción; (3) no procede el *injunction* estatutario porque: (a) los apelantes no alegaron ni demostraron tener un interés propietario o personal adversamente afectado, y (b) tampoco demostraron que el permiso se obtuvo mediando fraude o información falsa, y tampoco derrotaron la presunción de legalidad con evidencia suficiente; y (4) el defecto en la notificación de la "Resolución" se subsanó al emitirse una nueva notificación del dictamen, incluyendo nuevos términos para recurrir de esta.

De igual manera, Caribe Pharmacy expresa que las alegaciones de la demanda adolecen de esbozar conductas específicas que expongan alguna de las circunstancias requeridas por la Ley Núm. Núm. 161-2009, *supra.* Por esto, nos solicita que confirmemos el dictamen apelado.

Luego de un análisis sosegado del expediente, concluimos que el TPI actuó correctamente al desestimar la reclamación ante sí. Veamos por qué.

En primer lugar, el Art. 14.1 de la Ley Núm. 161-2009, *supra,* dispone que:

> ***En los casos en los que se solicite la revocación de una determinación final**, será parte indispensable de **en el pleito** la entidad o **profesional autorizado que haya emitido la determinación final** y el dueño del proyecto. Además, en los casos en los que se solicite la revocación de un permiso otorgado por haberse utilizado información incorrecta o falsa y que dicho permiso se haya expedido bajo las disposiciones de la Ley Núm. 135 de 15 de junio de 1967, según enmendada, dicho ingeniero o arquitecto también será parte indispensable ponle en el pleito.*

(Énfasis suplido).

De la precitada disposición legal surge claramente que el PA que expidió el permiso es parte indispensable en el caso donde se solicite la revocación de una determinación final al amparo del Art. Art. 14.1 de la Ley Núm. 161-2009, *supra.* Sin embargo, los apelantes omitieron incluir como parte al Ingeniero Juan M. Curbelo Santiago, quien fungió como PA en la expedición del permiso en controversia. Este hecho es suficiente para concluir que el TPI carecía de jurisdicción para atender los méritos del caso, por falta de parte indispensable.

Por otro lado, determinamos que, en el presente caso, los apelantes no han demostrado tener un interés propietario o personal que pueda verse adversamente afectado por el permiso en controversia. Según las alegaciones de la demanda, los apelantes ostentan legitimación debido a que:

> *[S]e dedican al negocio de la venta de gasolina al detal y venta de otros productos relacionados, en estaciones que ubican a una distancia menor de 1,600 metros radiales de la estación objeto de controversia, por lo que tienen un interés legítimo sobre el comportamiento del mercado de combustibles en el área en que opera [...], y cuyos intereses se ven y verán directamente afectados y perjudicados irreparablemente por el Permiso de Construcción.[9]*

No obstante, aun cuando los apelantes alegan que sus intereses se ven y verán afectados, estos no han demostrado, en forma específica, el perjuicio que están sufriendo. El simple hecho de que estos se dediquen al negocio de la venta de gasolina en

---

[9] Véase, alegación número 19 de la demanda; apéndice a la pág. 9.

estaciones que ubican a una distancia menor de 1,600 metros radiales de la estación objeto de controversia, por sí solo, no implica que estos estén sufriendo algún perjuicio. El factor de la distancia solo se toma en consideración a los efectos de la notificación dispuesta en la Sección 8.8.1.2 del Reglamento Conjunto, *supra*. Recordemos que las alegaciones conclusorias son insuficientes y tampoco deben presumirse como ciertas. Es decir, a base de los hechos aceptados como ciertos, la demanda tiene que establecer una reclamación plausible que justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sport y otros*, 2024 TSPR 13, 213 DPR ___ (2024).

De igual manera, coincidimos con la determinación del TPI respecto a que en la reclamación presentada por los apelantes no se especificaron conductas de fraude, engaño, extorsión, soborno o la comisión de delito en la etapa del permiso de construcción. Si bien los apelantes en algunos párrafos de la demanda hicieron referencia a los términos antes mencionados, no es menos cierto que ninguno de ellos contenía hechos bien alegados sobre dichas circunstancias.[10] Como si fuera poco, varias de las alegaciones donde se imputa fraude, engaño, extorsión, soborno o la comisión de algún delito se refieren a permisos distintos al que está en controversia.[11] En ese contexto, dictaminamos que los apelantes no cumplieron con esbozar conductas específicas que expusieran algunas de las circunstancias requeridas por los precitados Arts. 14.1 o 9.10 de la Ley Núm. 161-2009, *supra*. Debido a que los apelantes no cumplieron con lo requerido por ley para que el foro apelado pudiera atender el *injunction* estatutario, indudablemente el TPI no tenía jurisdicción sobre la materia para poder atenderlo.

---

[10] Véase, por ejemplo, alegación número 109 de la demanda; apéndice a la pág. 17.

[11] Véase, por ejemplo, alegaciones número 111 y 116 de la demanda; apéndice a las págs. 17-19.

En vista de lo anterior, determinamos que el TPI actuó correctamente al declarar Ha Lugar la Moción de Desestimación presentada por la OGPe, y desestimar la "Demanda y Petición de Interdicto Estatutario" presentada por los apelantes.

## IV.

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, confirmamos la "Resolución" emitida por la OGPe y, de igual forma, confirmamos la "Sentencia" emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina.

El Juez Adames Soto emite su voto de la siguiente manera: conforme en el caso KLRA202400653 y concurre en el caso KLAN202401157.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones